E. I. duPont de Nemours & Company

*v.*

Gordon S. Friar and James Alexander, Treasurer of the
State of Tennessee.

404 S.W.2d 518.

(*Knoxville*, September Term, 1965.)

Opinion filed June 3, 1966.

556

JAMES W. GENTRY, JR., Chattanooga, WITT, GAITHER, ABERNATHY & WILSON, Chattanooga, of counsel, for plaintiff in error.

GEORGE F. McCANLESS, Attorney General, and EDGAR P. CALHOUN, Assistant Attorney General, for defendant in error.

MR. CHIEF JUSTICE BURNETT delivered the opinion of the Court.

Gordon S. Friar, defendant in error, filed a petition for Workmen's Compensation in the Chancery Court of Hamilton County, Tennessee, naming as defendants in the petition, E. I. du Pont de Nemours & Company and James Alexander, State Treasurer of Tennessee, as custodian of the Second Injury Fund. The petition alleged that the defendant in error had been employed by the plaintiff in error, E. I. du Pont de Nemours & Company, as an iron worker on May 18, 1964, and that while in the

course and scope of his employment petitioner accidentally fell from a ladder causing injury to his back and rendering him permanently and totally disabled. Petitioner further alleged that prior to this injury while with du Pont he had been suffering from spondylolisthesis, a condition of the spine, as well as a 10% disability to the body as a whole because of frostbitten feet. Because of the foregoing facts, Friar insisted that he had been suffering from a permanent disability prior to the industrial accident of May 18, 1964, and was therefore entitled to some relief from the Second Injury Fund.

The cause was heard upon oral proof. At the conclusion of the trial the Chancellor took the case under advisement and subsequently filed a memorandum opinion, a portion of which states:

"The principal issues are the extent of complainant's disability and whether or not he suffered from a disability prior to this accident which would enable him to recover from the Second Injury Fund in the event the Court finds that he was rendered permanently and totally disabled by the last injury. It appears that complainant, prior to this accident, had suffered other accidents, injuries and surgical operations, but that at the time of this accident and for a period of time prior thereto, he was able to perform his regular work without difficulty. Therefore, pursuant to the decision of the Supreme Court in *Davis vs. Alexander*, 213 Tenn. 131, 372 S.W.2d 769, at the time of this accident complainant was not suffering from a 'permanent disability' within the meaning of T.C.A., Sections 50-1027. It is true that he had a disease or congenital defect known as spondylolisthesis of the spine, but it was latent and non-disabling and even unknown to com-

558

plainant. The result is that the Second Injury Fund cannot be held liable in this case.

"The Court finds that complainant is permanently and totally disabled by reason of the instant accident and injuries and the aggravating effect they have had upon the condition of the spondylolisthesis with which he was afflicted at the time of his employment but which, up to the time of said accident, was a latent and non-disabling condition. An employer takes an employee as he finds him and is liable for the disability resulting from an accident which aggravates a pre-existing but non-disabling latent disease. *Ledford vs. Miller Bros. Co.*, 194 Tenn. 467, 253 S.W.2d 552.

"Complainant is entitled to an award for permanent total disability beginning August 1, 1964, and for his medical expenses against his employer, E. I. Du Pont DeNemours and Company. Solicitor for complainant shall submit a decree."

We will first address ourselves to the position of the Chancellor that an employee who has a prior disability but is able to perform his work without difficulty is not suffering a "prior disability" within the meaning of our Second Injury Fund Statute, T.C.A. sec. 50-1027.

We are of the opinion that the case of *Davis v. Alexander*, supra, is not authority for this position. In the *Davis* case, supra, we held that:

"T.C.A. sec. 50-1027 provides for payment from the Second Injury Fund when and only when an employee becomes permanently and totally incapacitated resulting from a second injury. If the employee is not permanently and totally disabled, then he has no claim against the Second Injury Fund. In order to sustain

such a claim he has to prove first that he sustained a previous permanent disability and that as a result of a second injury he has become permanently and totally disabled.

"The petitioner in this proceeding agreed in open court that he was not *totally* disabled and, as a matter of fact, agreed that his permanent partial disability was only thirty-seven and one-half per cent to the body as a whole.

"Finally, we hold that there must be two permanent disabilities, the second resulting in total disability before there can be a recovery under the Second Injury Fund."

The issue upon which the *Davis* case, supra, turned was not that there was no prior disability, but that the injured employee was not suffering a *total* disability subsequent to the second injury and was therefore not covered by the Second Injury Fund.

■ It could not be the rule that an employee who suffers a disability, such as an amputee, but who is able to perform his work without difficulty is *not* disabled for purposes of Second Injury Fund coverage. To so hold would be to defeat the whole purpose of Second Injury Fund legislation. Let us say, for example, that a man with a wooden leg is hired for assembly line work; in the course of which he is seated, and using his hands to assemble a product. He is able to perform his work without difficulty, yet it is abundantly clear that if he were involved in an industrial accident, arising in the course and scope of his employment and lost his other leg, so becoming totally disabled, that the Second Injury Fund would be liable. The test of whether or not an employee is

able to perform his work without difficulty is not appropriate in this situation.

The real question in this case is centered around the term "previously sustained a permanent disability" as contained in T.C.A. sec. 50-1027, the portion of which as is here pertinent is as follows:

> *Subsequent permanent injury after sustaining previous permanent injury*—* * * If an employee has previously sustained a permanent disability by reason of the loss of, or loss of use of, a hand, an arm, a foot, a leg, or an eye and becomes permanently and totally incapacitated through the loss, or loss of use of another member, he shall be entitled to compensation * * *."

For the definition of this term we look first to the history and purpose of Second Injury Fund legislation. In the development of the law of Workmen's Compensation the rule has come to be that an employer takes an employee the way he finds him and is liable for the disability resulting from an accident which aggravates a pre-existing physical impairment. This rule, of course, meant that employers were assuming additional liability when a person was hired who had a physical impairment, and naturally resistance to employment of such persons became evident in hiring policies.

The Legislature, recognizing that employment of handicapped persons is in the interest of society, enacted the Second Injury Fund law to overcome some of the resistance to employment of disabled persons. The clear purpose of this legislation is to encourage employers to hire workers with an existing handicap which would impair their competitive position as a job seeker.

■ The defendant in error, James Alexander, custodian of the Second Injury Fund, argues that since the prior disability in this case does not involve any of the members enumerated by the statute, there is no "prior disability" within the meaning of T.C.A. sec. 50-1027.

We must reject this argument. Controlling case law in this State does not support this position. If this were the interpretation we proposed to make of "prior disability", we could and would have done so in *Green v. Cumbusion Engineering, Inc.*, 217 Tenn. 153, 395 S.W.2d 810. In that case it would have been easy enough for us to say that there had been no loss of or loss of use of one of the members enumerated by the statute and there was therefore no prior disability. When we decided the Green case, however, this type of rigid test had already been rejected by us in *Stovall v. General Shoe Corporation*, 204 Tenn. 358, 321 S.W.2d 559 (1959), for the reasons therein stated, and we are of the opinion that the custodian's argument is inconsistent with the synthesis of our holdings in these two cases and inconsistent with the purpose of the Act.

■ Moreover, the *Green* case, supra, set out some guide lines as to the nature of a disability which can be classified as a "prior permanent disability" within the meaning of T.C.A. sec. 50-1027. One of these guide lines is that the pre-existing disability must be one capable of supporting an award under our Workmen's Compensation Act, if it had arisen out of and in the course of the employee's employment.

■ In the case at bar, the first determinative question which must be answered is whether or not spondylolisthesis is a disability which is capable of supporting an

award under our Workmen's Compensation Act. We must answer this question affirmatively since it is established that such a disability, in addition to being congenital, may result from trauma. [See *Keller v. Anderson Sand and Gravel Co. et al.*, 292 Mich. 625, 291 N.W. 32].

■ Another guide line as to the meaning of a "prior permanent disability" as contained in T.C.A. sec. 50-1027 is found in the quotation from Larson's Workmen's Compensation Law, Vol. 2, sec. 59.33, page 63, as contained in the *Green* case, supra:

"\* \* \* As a matter of general principle, it would probably be more accurate to say that the second-injury legislation, in line with its basic purpose, should not be extended to prior conditions of such character that employers would presumably be unaware of them and would therefore be unaffected by them in their hiring policies."

■ Stated another way, this guide line is: did the employer know of a physical condition of the employee, at the time of the hiring of the employee, which detracted from such employee's competitiveness in the job market? If the employer did have knowledge of such a pre-existing condition and the employee was hired in spite of such a condition, then we think that the Second Injury Fund would be liable if a second injury rendered the employee totally disabled. We think that this is in harmony with the most basic purpose of Second Injury legislation.

■■ It is clear to us from the record and the stipulations that du Pont had no knowledge of any pre-existing physical impairment at the time Gordon S. Friar was hired, and we must therefore find that they are liable

for the full compensation award in this case. Clarity demands that we state that in absence of a disability which even a layman would label as patent, the presumption would be that the employer was unaware of such pre-existing disability, and the employer would have to stand the burden of proving knowledge of such a condition at the time of hiring. We are not without authority in taking this position for this same position was taken by the court in *Zyla v. A. D. Juilliard & Co.,* 277 App.Div. 604, 102 N.Y.S.2d 255 (1951).

The finding of the Chancellor absolving the Second Injury Fund of liability in this case, and holding du Pont liable for the total award of 100% total disability to Gordon S. Friar is affirmed.

We would like to thank counsel for all parties in this case for an excellent presentation of this case in their briefs and argument to this Court.