U. S. PIPE & FOUNDRY COMPANY and Harlan Mathews, Treasurer of the State of Tennessee and Custodian of the Second Injury Fund, Appellants-Defendants,

v.

John T. CARAWAY, Appellee-Plaintiff.

Supreme Court of Tennessee, Eastern Division.

Feb. 7, 1977.

Phillip A. Fleissner, Chambliss, Bahner, Crutchfield, Gaston & Irvine, Chattanooga, C. Hayes Cooney, Asst. Atty. Gen., for appellants-defendants; R. A. Ashley, Jr., Atty. Gen., of counsel.

Ralph E. Vineyard, Chattanooga, for appellee-plaintiff.

## OPINION

HARBISON, Justice.

In this workmen's compensation case, the employee was found by the Chancellor to be totally and permanently disabled as the combined result of an industrial injury sustained on March 4, 1974 and a pre-existing congenital condition in his lower abdomen which had been the subject of repeated surgical procedures for hernia repair. The award was apportioned between the employer and The Second Injury Fund. Both the employer and the Custodian of The Second Injury Fund have appealed, raising separate issues.

The employee had worked for appellant U. S. Pipe & Foundry Company, and its predecessor, since about 1950. He has limited formal education, and is barely literate. He had operated an automatic pipe machine for eighteen or nineteen years prior to the accident which occurred on March 4, 1974. On that date his right hand became caught in the machinery when he was attempting to remove broken pieces of pipe therefrom.

There can be no question from an examination of the medical evidence in the record that the injury to the right hand and wrist of appellee was severe and painful. Initial surgical procedures were required, and thereafter a number of attempts were made to relieve intense pain in the hand, wrist and forearm by neurosurgery and injections of anesthetics. Dr. Thomas W. Currey, an orthopedic specialist, attended the appellee and saw him at regular intervals from the date of the accident through May 9, 1975, a period of some fourteen months. He thereafter saw appellee in 1976 and hospitalized him from February 16 through March 5, when efforts were made to relieve the appellee's severe and chronic pain through nerve blocks or injections of anesthetics in his neck and shoulder. Dr. Currey had originally expressed the opinion that appellee would retain thirty percent permanent partial disability to the right arm, but after his last examination of appellee on March 18, 1976 he felt that appellee retained forty-five percent permanent impairment to the arm. On the date of this physician's last examination, appellee continued to have loss of strength in his grip and a marked tremor in his hand, as well as severe and persistent pain. The doctor stated that he did not believe that appellee could resume the performance of physical labor with the degree and extent of pain which had been manifested, and he knew of no further medical or surgical procedures to recommend for alleviation of the condition. He testified positively that appellee could not use his arm in any heavy physical labor.

Because of the persistent severe pain in his hand and right index finger, appellant independently consulted Dr. George M. Stevens of Oak Ridge, Tennessee, who attempted a surgical procedure to permit a greater range of motion in the injured finger. Dr. Stevens was of the opinion that appellee retained seventy-five percent permanent partial disability to the right index finger, or twenty percent disability to the hand. He did not attempt to evaluate any

injury to the wrist or any other neurological problems associated with the injury, but confined his treatment to the index finger.

The appellee himself testified as to the very limited use which he could make of his right hand and arm and, of course, he was seen and observed by the Chancellor. After consideration of all of the evidence, both medical and lay, the Chancellor awarded appellee eighty percent permanent partial disability to the right arm, together with temporary total disability benefits and medical expenses.

The employer has filed a single assignment of error, to the effect that there is no material evidence to support any award based on a greater disability than that shown in the expert medical testimony. The employer insists that the Chancellor should have limited the award to forty-five percent permanent partial disability of the right arm, since this was the maximum disability rating given by any of the medical witnesses based upon the March 4, 1974 industrial accident.

It is the insistence of the employer that in the case of a scheduled injury, the trial court must make an award in accordance with the schedule contained in T.C.A. § 50–1007(c). It insists that when there is partial loss of use of a scheduled member, the award is measured by "the extent of injury" to the particular member, as specified in the statute. It is the insistence of the employer that loss of income or earning capacity or "industrial disability" are not to be considered, and that the trial court must be guided solely and alone by the ratings given by expert medical witnesses.

■ We are unable to accept this contention of the employer, and do not find it to be supported either by statutory language or by the reported cases. It is true that in many of the reported decisions, awards for scheduled injuries have been based entirely upon expert testimony, and disability ratings have been frequently fixed within the range of estimates of medical witnesses. We do not find, either in the statute or in the cases, a mandatory requirement that the trial judge fix permanent partial loss of

use of a scheduled member solely with reference to expert testimony.

When, as in the present case, there are differing evaluations given by expert witnesses, and when the trial judge receives lay testimony and has the opportunity to see and examine the injured claimant, in our opinion he must perform essentially the same judicial function as when he evaluates permanent partial disability to the body as a whole. That is, he must take into account all of the testimony before him. Permanency of course, must be established in these cases, as in all others, by expert medical testimony except in the most obvious cases, such as the amputation of a member. The determination of "the extent of injury", as phrased in the statute, or the extent of permanent partial loss of use of a scheduled member is to be determined in the same manner and by essentially the same criteria as any other case of permanent partial disability. It is true, of course, that since 1963 loss of earning capacity and wage differentials are no longer the basic criteria for determining permanent partial disability in the case of unscheduled injuries, any more than they are criteria in the case of injury to scheduled members.

The employer recognizes that in the case of *Pulaski Rubber Co. v. Rolin,* 481 S.W.2d 369 (Tenn.1972), this Court, in a case of scheduled injury, sustained an award of permanent partial disability in excess of the disability rating given by medical experts. Appellant disagrees with that decision, and contends that it represents an aberration or a departure from previously decided cases. We do not so consider it, and find numerous cases in which awards greater than those given by examining physicians were sustained for injuries to scheduled members. See, *e.g., Eaton Corp. v. Quillen,* 527 S.W.2d 74 (Tenn.1975); *Davis Blasting Co. v. Roberts,* 517 S.W.2d 5 (Tenn.1974); *Lambert Bros. v. Dishner,* 212 Tenn. 697, 372 S.W.2d 166 (1963).

■ It is clear from an examination of the record in this case that the employee has sustained a severe and permanent inju-

ry to his right hand and arm, and we are of the opinion that there is material evidence to support the determination of the Chancellor that his disability should be fixed at eighty percent, rather than the lower ratings stated in the expert opinions. The assignment of error filed on behalf of the employer is overruled.

On this appeal neither the employer nor the Custodian of the Second Injury Fund questions the finding by the Chancellor that the appellee is totally and permanently disabled within the meaning of the workmen's compensation law as the result of the industrial injury sustained on March 4, 1974 and the pre-existing condition from which appellee admittedly suffered. The single assignment of error made on behalf of the Custodian is based upon a 1973 amendment to the statutory provisions governing the Second Injury Fund. This amendment to T.C.A. § 50–1027 was contained in Section 10 of Chapter 379 of the Public Acts of 1973, and is as follows:

".   .   . and the employer must establish by written records that the employer had knowledge of the permanent and pre-existing physical impairment at the time the employee was hired or at the time the employee was retained in employment after the employer acquired such knowledge but in all cases prior to the subsequent injury. In determining the percentage of disability for which the second injury fund shall be liable, no physical impairment shall be considered unless such impairment was within the knowledge of the employer as prescribed above."

It is insisted on behalf of the Custodian that the employer failed to establish by written records its knowledge of the employee's impairment prior to March 4, 1974, and that the employer's records failed to reveal that the employee did suffer from a previous permanent partial disability.

Based upon our examination of the record, we are not able to agree with the contentions of the Custodian. Prior to the 1973 amendment, judicial decisions had laid down a requirement that an employer must have knowledge of the employee's physical impairment either at the time of hiring or at some time prior to the second injury which resulted in total permanent disability. See *Strong v. Insurance Company of North America,* 490 S.W.2d 162 (Tenn.1973); *E. I. duPont v. Friar,* 218 Tenn. 554, 404 S.W.2d 518 (1966). The 1973 statutory amendment strengthened this rule and requires that such knowledge by the employer be established "by written records".

The statute does not specify the nature or type of records which are sufficient to meet its requirements. In the present case both the employee and the Personnel Director of the employer testified that the employee had had frequent operations for hernia over a period of more than twenty years, and that the employer was fully apprised of this fact. Expenses incident to these operations had been paid in some instances by workmen's compensation and in other instances from other insurance policies carried by the employer. The Personnel Director, Mr. Wooten, filed as an exhibit to his testimony a portion of the records contained in the personnel file of the employee. Among these was a bill from Dr. J. Paul Johnson, dated August 24, 1950 for surgical procedures performed on June 24, 1950 for repair of the right inguinal ring. There is also included a hospital bill for the period June 23 through July 5, 1950. An insurance claim form for surgical expenses incident to repair of the left inguinal hernia during the period August 9, through August 17, 1972 was also filed. Contained in the file was a letter written in 1950, making reference to the June 1950 herniotomy, and there is a report from Dr. Harry A. Stone dated November 16, 1971 which states in part:

"Incidentally, this man has had three hernia repairs on the left. He has an atrophic painful left testicle and probably has a recurrence now .   .   .. He has an atrophic tender left testicle. He has multiple scars in the left inguinal area and a weak place when he coughs and strains. There is pain to flexion of the thighs on the abdomen and exquisite pain to straighten leg raising on the left."

Also among the personnel records filed was a card summarizing the hospital medical and surgical claims of the employee from 1967 through 1972. Among the numerous entries on this card are references to hernia repair in January 1967, in June 1967 and in August 1972.

As discussed in the cases heretofore cited, the purpose for the creation and maintenance of the Second Injury Fund was to encourage employers to hire and retain in their employment handicapped persons. Consistent with and in furtherance of this purpose is the requirement that the employer have actual knowledge of a permanent impairment or handicap of the employee either at the time of hiring or prior to a second injury which culminates in total permanent disability. The requirement of actual knowledge, now strengthened by the statutory requirement of written records, helps to insure that the Second Injury Fund serves its intended purpose, and at the same time tends to protect the Fund from claims which may be spurious or collusive, in which "knowledge" of a pre-existing injury might first be asserted by the employer after the occurrence of the subsequent injury.

We are of the opinion that the requirement of written records is a reasonable one, but it should also be fairly and reasonably interpreted. In the present case there is no claim of collusion, and, as presented to this Court, there is no question but that the employee did in fact suffer from a pre-existing permanent partial disability which would entitle him to a recovery from the Second Injury Fund when he sustained a second scheduled injury resulting in total permanent disability.

The written records which have been filed fully corroborate the oral testimony of the Personnel Director that the employer was aware of the handicaps under which the appellee labored and which persisted throughout the many years when he was retained in employment. It is true that the words "permanent and pre-existing physical impairment" do not appear in any of the written records filed as exhibits, but there is ample reference to the repeated surgical procedures to which the employee was subjected, and certainly no later than November 19, 1971 the employer was advised by a written report from Dr. Stone that the employee had weakness in the inguinal area, was subject to recurrent hernia and "probably has a recurrence now."

We are of the opinion that when it can fairly and reasonably be inferred from such records as are produced in evidence that the employer did have knowledge of the physical handicap or impairment of the employee before occurrence of the injury which activates the Second Injury Fund claim, then the requirements of T.C.A. § 50–1027 here under consideration are satisfied.

It is true, as insisted by the Custodian, that the Chancellor did not make an express finding of fact concerning the existence of written records. Our examination of the transcript, however, shows that the records to which we have made reference were filed in evidence as a collective exhibit. It is apparent that the Chancellor concluded that the statutory requirements had been met, although perhaps it would have been better practice for him to have made specific allusion to them.

The assignment of error of the Custodian is overruled, and the judgment of the Chancellor is in all respects affirmed. Costs of the cause are taxed equally to the employer and to the Custodian of the Second Injury Fund.

COOPER, C.J., and FONES, HENRY and BROCK, JJ., concur.