HOLDER, Justice,
concurring and dissenting.
I agree with the majority’s holding that an employee who is permanently and totally disabled is entitled to receive benefits until age 65. I dissent, however because: (1) I believe the majority’s analysis of the proper division between the employer and the Second Injury Fund substitutes a judicially-created policy of “equitable division” for the clear and established legislative policy that dictated the Second Injury Fund legislation; and (2) I disagree with the majority’s approach in finding both subsection (a) and (b) applicable in cases of permanent total disability.
DIVISION BETWEEN EMPLOYER AND SECOND INJURY FUND
I disagree with the majority’s decision to “equitably divide” the total award between the employer and the Second Injury Fund and not to limit the employer’s liability to the first 400 weeks of the award. Applying the majority’s analysis, employers will be deterred from the hiring of the handicapped. For example:
X is 20 years old and has a prior non-eompensable disability of 75 percent. X sustains a compensable disability of 25 percent and is rendered permanently and totally disabled.
Y is 20 years old with no previous disability. Y sustains the precise injury that X sustained. Y receives a 25 percent disability rating and is able to continue working.
According to the majority, an employer will pay 585 weeks (25% of 2340 weeks) of X’s total compensation. Y, however, will receive only 100 weeks (25% of 400 weeks) compensation for the same injury. Under the majority’s analysis, X’s employer has incurred an additional 485 weeks or nearly six times the liability of Y’s employer by having hired an employee with a prior disability instead of an employee with no prior disability. This result is contrary to the clear purpose of the Second Injury Fund and will have a devastating impact on the ability of the handicapped to obtain employment.
The majority asserts that “[tjhere is no indication in the workers’ compensation law that the legislature intended to limit an employer’s liability under Tenn.Code Ann. § 50-6-208 to 400 weeks.” Subsection (b), however, expressly limits an employer’s liability to “one hundred percent (100%) permanent disability to the body as a whole.” Accordingly, subsection (b) does purport to limit an employer’s liability. The issue, therefore, becomes: To what does 100 percent to the body as a whole equate in terms of compensability as contemplated under subsection (b)?
If a worker has sustained prior permanent partial compensable injuries to the body as a whole of 30 percent and 70 percent, the employer’s liability is limited to the first 100 percent or 400 weeks compensation. If a worker has a prior compensable disability of 50 percent and subsequently sustains a com-pensable disability of 70 percent but is able to earn a wage, the employer’s liability is still limited to 100 percent or 400 weeks total compensation. Accordingly, I would find that the first 100 percent to the body as a whole as contemplated under subsection (b) equates to 400 weeks of total compensation.
APPLICATION OF SUBSECTION (a) or (b)
I disagree with the majority’s approach of finding both subsection (a) and subsection (b) applicable in cases of permanent total disability and then applying the subsection favoring the employer. The Second Injury Fund was created merely to assure that, in cases of permanent total disability, an employer incurs the same liability by hiring a disabled worker as it incurs by hiring a healthy worker. Accordingly, the Second Injury Fund should be absolved from liability when a *937 worker with a preexisting disability sustains a catastrophic injury which would render even a healthy worker permanently and totally disabled.
Assume a worker with a preexisting com-pensable disability of 35 percent is hired by an employer. The worker then sustains a catastrophic injury which would cause permanent total disability or 100 percent vocational disability absent any preexisting conditions. The majority’s approach is as follows: (1) under subsection (a), the employer would be responsible for 100 percent; (2) under subsection (b), add 100 percent to the preexisting 35 percent, apportioning 65 percent to the employer and 35 percent to the Second Injury Fund; and (3) choose the result favoring the employer. Accordingly, the majority would apply subsection (b) (65 percent instead of 100 percent), and the Second Injury Fund would incur liability for an injury that would have caused permanent total disability regardless of any preexisting condition.
HISTORICAL ANALYSIS
A prevailing view during the development of workers’ compensation law was that an employer took an employee as he found him. E.I. du Pont de Nemours & Co. v. Friar, 218 Tenn. 554, 404 S.W.2d 518, 521 (1966). The employer, therefore, was liable for all disabilities that resulted from an accident that aggravated a preexisting physical impairment. Id. Accordingly, employers assumed additional liability by hiring individuals suffering physical impairments. Id. This additional liability led to considerable resistance in the hiring of the handicapped. Id.
The legislature recognized that employment of the handicapped was in the interest of society and responded by enacting the Second Injury Fund legislation. Id. The Second Injury Fund was designed “to overcome some of the resistance to employment of disabled persons.” Id. To overcome this resistance, the Second Injury Fund limited an employer’s liability when the employer hired a disabled worker and the worker subsequently became permanently and totally disabled by a compensable injury. Id. Accordingly, the purpose of the Second Injury Fund legislation was “to encourage employers to hire workers with an existing handicap which would impair their competitive position as a job seeker.” Id.; See also Brown v. John Martin Const. Co., 642 S.W.2d 145, 147 (Tenn.1982) (noting statute “seeks to reward the employer’s humane gesture” by limiting its liability). The history of legislative encouragement in the hiring of the handicapped along with the related concept of limiting employer liability must be considered when analyzing subsection (a) and the later addition of subsection (b).

Subsection (a)

The Second Injury Fund operates to relieve an employer of liability while assuring that injured employees receive full compensation. The statutory provisions establishing the Second Injury Fund are codified at Tenn. Code Ann. § 50-6-208. Subsection (a) of § 50-6-208 reads in pertinent part:
If an employee has previously sustained a permanent physical disability from any cause or origin and becomes permanently and totally disabled through a subsequent injury, such employee shall be entitled to compensation from such employee’s employer or the employer’s insurance company only for the disability that would have resulted from the subsequent injury, and such previous injury shall not be considered in estimating the compensation to which such employee may be entitled under this Chapter ...
Tenn.Code Ann. § 50-6-208(a)(l). Subsection (a) also provides that:
Nothing in this section shall be construed to limit the employer’s liability as provided by law for aggravation of preexisting conditions or disabilities in cases where recovery against the second injury fund is not applicable.
Tenn.Code Ann. § 50-6-208(a)(4).
Reading subsections (a)(1) and (a)(4) in pari materia, Lyons v. Rasar, 872 S.W.2d 895, 897 (Tenn.1994), I find that under § 50-6-208(a)(1), an employer is responsible only for that disability that the subsequent work-related injury occasioned. The legislature’s insertion of subsection (a)(4) prohibits consideration of aggravation or exacerbation of *938 preexisting conditions when determining an employer’s liability under subsection (a). Accordingly, an employer under subsection (a) is responsible only for that disability that would have resulted from the subsequent injury had the earlier injury not existed.
This interpretation furthers the legislative purpose of enacting the Second Injury Fund. To interpret otherwise would run counter to the policy of encouraging employers to hire the handicapped. I shall use the following hypothetical for illustrative purposes:
Employer hires two employees, X and Y. X has a congenital condition that causes a 5 percent anatomical disability. Y has no disabilities.
Both X and Y suffer precisely the same compensable injury. Y sustains a 70 percent vocational impairment. X, however, is rendered permanently and totally disabled when the compensable injury is superimposed over X’s prior disability.
X is entitled to benefits until age 65. Y, however, is entitled to 70 percent of 400 weeks, or 280 weeks of compensation. The Second Injury Fund does not incur a portion of Y’s award.
This example assumes that X would have sustained only a 70 percent vocational disability absent the preexisting condition. If the employer pays benefits above and beyond 280 weeks, the employer has assumed additional liability by hiring an individual with a preexisting disability. Moreover, X’s disability exceeding 70 percent is either attributable to a preexisting condition or to an aggravation of a preexisting disability.
The above result holds true whether the employee’s preexisting condition is compen-sable or noneompensable under the Act. The inverse, as the Second Injury Fund argues, should also be true. The Second Injury Fund should not be implicated if the subsequent injury would have in and of itself caused permanent and total disability. See Church v. N.B.C Co. Inc., 224 Tenn. 658, 461 S.W.2d 387, 388 (1970) (holding Second Injury Fund not implicated when “employee sustained total permanent disability (100 percent) from the current disability (silicosis) without considering the previous permanent disability [of 35 percent]”).

Subsection (b)

I read subsection (b) as relying on a mathematical computation to assess awards rather than on the relative contribution of the subsequent injury. Tennessee Code Annotated § 50-6-208(b)(l)(A) reads as follows:
In cases where the injured employee has received or will receive a workers’ compensation award or awards for permanent disability to the body as a whole, and the combination of such awards equals or exceeds one hundred percent (100%) permanent disability to the body as a whole, the employee shall not be entitled to receive from the employer or its insurance carrier any compensation for permanent disability to the body as a whole that would be in excess of one hundred percent (100%) permanent disability to the body as a whole, after combining awards.
The Second Injury Fund shall pay any benefits in excess of 100 percent permanent disability to the body as a whole after all com-pensable awards are combined. Tenn.Code Ann. § 50 — 6—208(b)(1)(B) (1996 Supp.); Henson v. City of Lawrenceburg, 851 S.W.2d 809, 812 (Tenn.1993).
Subsection (b) clearly limits an employer’s exposure for all compensable awards to the first 100 percent of combined permanent vocational disability. Assessment under subsection (b) is as follows: Employee has sustained two prior compensable awards with vocational disabilities totaling 75 percent and a non-compensable injury of 5 percent. Employee then sustains a third compensable injury which causes an additional 30 percent vocational disability. The employee, however, can still perform light duty and earn a wage. Under this scenario, the non-compen-sable injury should be ignored and the employer should be responsible for 25 percent of 400 weeks with the Second Injury Fund incurring the remaining 5 percent of the 400 weeks.
Application of subsections (a) and (b)
Having determined that assessment of liability is different under subsections (a) and (b), I shall now address under what circum *939 stances a trial court applies either (a) or (b). I believe that this Court’s interpretation of both subsections’ applications should further the legislative intent in enacting the Second Injury Fund.
The Second Injury Fund legislation was formerly codified at Tenn.Code Ann. § 50-1027. The 1945 amendment to § 50-1027 reads as follows:
If an employee has previously sustained a permanent disability by reason of the loss of, or loss of use of, a hand, an arm, a foot, a leg, or an eye and becomes permanently and totally incapacitated through the loss, or loss of use of another member, he shall be entitled to compensation from his employer or the employer’s insurance carrier; ... provided, however, that in addition to such compensation for said subsequent injury, and after completion of the payments therefor, then such employee shall be paid the remainder of the compensation that would be due for the permanent total disability out of a special fund to be known as the “second injury fund” herein created.
Accordingly, the 1945 amendment addressed only that situation in which an employee was rendered permanently and totally disabled as the result of a subsequent injury. The 1945 amendment did not contain a provision comparable to Tenn.Code Ann. § 50-6-208(b)(l) that addresses compensable permanent partial vocational disabilities exceeding 100 percent in the aggregate.
The 1945 amendment is similar to Tenn. Code Ann. § 50-6-208(a)(l).[9] Both statutes require a subsequent injury causing a permanent total disability. Both statutes further provide that prior injuries shall not be considered when estimating the current award. The 1945 amendment, however, limited recovery to situations in which an employee previously sustained a permanent disability to a hand, arm, foot, leg, or eye and subsequently became permanently and totally disabled as the result of an injury to “another member.”
Our present statute, as amended, extends subsection (a)’s coverage to encompass all forms of preexisting conditions. See Tenn. Code Ann. § 50-6-208 (stating “[i]f an employee has sustained permanent physical impairment from any cause or origin ...”) (emphasis added). Accordingly, subsection (a) should apply when a permanently and totally disabled worker has sustained: (1) prior compensable injury(ies); (2) prior non-compensable injury(ies); or (3) a combination of prior compensable and non-compensable injuries. The legislature’s inclusion of the “catch all” phrase in subsection (a) is an indication that the legislature intended subsection (a) to apply whenever a subsequent injury causes permanent and total disability.
Both the inclusion of the “catch all” phrase in subsection (a) and the addition of subsection (b) appeared in the 1985 amendment. I, therefore, find it improbable that the legislature intended subsection (b) to apply to subsequent injuries causing permanent and total disabilities when it simultaneously broadened subsection (a) to encompass all permanent total disabilities regardless of the origin of the preexisting conditions.
I believe it an untenable proposition that the legislature intended both subsections to apply to the same case and render a different result. The majority’s solution is to apply whichever subsection is “favorable to the employer.” The statute, however, neither mandates nor requires this construction.
The application of both subsections may occur under the majority’s analysis whenever an employee becomes rehabilitated after receiving permanent partial disability awards under the workers’ compensation statute. For example, an employee who has prior permanent partial compensable disabilities totaling 80 percent returns to work and is able to perform as well as prior to the injuries. The employee then sustains a work-related injury that causes the employee to become permanently and totally disabled. The trial court finds under subsection (a) that the last injury caused a 40 percent vocational disability absent consideration of the prior injuries. Under my analysis the em *940 ployee would receive a 40 percent award from the employer, with the Second Injury Fund responsible for the remaining 60 percent. I would not apply subsection (b).
The majority would agree that the employer is responsible for 40 percent under subsection (a). Applying subsection (b), however, the majority would find the employer responsible for 20 percent (the difference between the prior awards and 100 percent) and Second Injury Fund responsible for 20 percent (80 percent + 40 percent, with that portion exceeding 100 percent apportioned to the Second Injury Fund). Since the 20 percent finding is more favorable to the employer than the 40 percent finding, the majority would apply subsection (b). What the majority fails to address is that the employee will receive only 40 percent of the total disability award under the majority’s analysis.
We should presume that the legislature did not intend an absurdity and adopt a reasonable construction which avoids statutory conflict. Cronin v. Howe, 906 S.W.2d 910, 912 (Tenn.1995); Epstein, v. State, 211 Tenn. 638, 366 S.W.2d 914 (1963). Interpreting the subsections to be mutually exclusive avoids arbitrarily deciding which subsection shall apply. I would therefore overrule this Court’s holding in Perry that the subsections are not mutually exclusive. Perry v. Sentry Ins. Co., 938 S.W.2d 404 (Tenn.1996).
Upon reading the statutes in pari materia and examining the plain language of the § 50-6-208(a) & (b), I would find that subsection (a) applies when there is a subsequent injury and the employee is rendered permanently and totally disabled. Subsection (b) applies only when the employee is still able to earn a wage or be gainfully employed but has received compensable vocational disabilities which exceed 100 percent or 400 weeks of compensation.
In this case, Bomely was rendered permanently and totally disabled as a result of the 1994 compensable injury. He previously had sustained both compensable and noncom-pensable injuries. Because Bomely is no longer able to earn a wage, I would hold that subsection (b) does not apply. His employer had notice of his preexisting conditions. Accordingly, subsection (a) applies. I would affirm the trial court’s finding that, under subsection (a), Bomely sustained a 20 percent disability as a result of the 1994 injury and that the liability of the employer is limited to the first 400 weeks of disability.
Under subsection (a) I believe we should determine what vocational disability the 1994 injury would have caused if Bomely had no preexisting condition. Although the trial judge erroneously decided the case under subsection (b), he alternatively found that under subsection (a) Bomely would have sustained a 20 percent vocational disability absent consideration of his preexisting conditions. I would find that the trial judge’s finding of 20 percent is supported by the record. I would, therefore, apportion under subsection (a) as follows: (1) the employer is responsible for 20 percent of 400 weeks; and (2) the Second Injury Fund is responsible for the remaining benefits until age 65.
I am mindful that this holding would have a harsh impact on the Second Injury Fund in light of the legislative amendment which permits benefits until age 65. The legislature, however, did not amend the language providing for assessment of liability under subsections (a) and (b) when it amended Tenn.Code Ann. § 50-6 207(4)(A)(I) to permit benefits to age 65. Moreover, the policy which dictated the Second Injury Fund has not been altered. Accordingly, I believe we are constrained to interpret the statute in a manner which furthers the policy that dictated the legislation. I would overrule cases holding to the contrary. Although I fully subscribe to the need for stare decisis, I am willing to abandon an analysis that in hindsight does not further the purposes of the Second Injury Fund statute.
The majority bases its analysis on a theory of equity. Equity, however, is not a policy that dictated the Second Injury Fund legislation. The Second Injury Fund was created to encourage the hiring of the handicapped. The majority in striving for equity, however, has essentially altered or re-legislated the policy that dictated the creation of the Second Injury Fund.

. If an employee has previously sustained a permanent physical disability from any cause or origin and becomes permanently and totally disabled through a subsequent injury ... Tenn.Code Ann. § 50-6-208(a)(l).