IN THE SUPREME COURT OF TENNESSEE
SPECIAL WORKERS' COMPENSATION APPEALS PANEL
AT NASHVILLE

**LARRY HOPPER V. OSHKOSH B'GOSH AND STATE OF TENNESSEE
DEPARTMENT OF LABOR, DIVISION OF WORKERS'
COMPENSATION, SECOND INJURY FUND**

**Direct Appeal from the Circuit Court of Clay County
No. 1410WC, Hon. John D. Maddux, Circuit Judge**

_____

**No. M2004-01683-WC-R3-CV - Mailed: August 22, 2005
Filed - September 22, 2005**

_____

This case is before the Court upon the entire record, including the order of referral to the Special Workers' Compensation Appeals Panel, in compliance with Tennessee Code Annotated § 50-6-225(e)(3) for hearing and reporting of findings of fact and conclusions of law. Mr. Hopper injured his back February 19, 1996 while working in the warehouse of his employer. On November 17, 1997 Mr. Hopper settled this claim for 20% vocational disability. All told, Mr. Hopper initiated four workers' compensation claims during his employment with OshKosh resulting in 100% vocational disability. Several years later, after he lost his job with OshKosh, Mr. Hopper filed a motion to reconsider his earlier settlement of the February 19, 1996 claim against the Second Injury Fund only. The trial court granted this relief, increased Mr. Hopper's vocational disability by 30%, and assigned liability to the Second Injury Fund. The Second Injury Fund appeals on the grounds that the employee's motion was untimely, that the trial court did not have subject matter jurisdiction because the employee had suffered subsequent injuries, and that the evidence preponderated against increasing the employee's vocational disability. After carefully reviewing the record, we reverse the trial court's judgment.

**Tenn. Code Ann. § 50-6-225(e)(3) Appeal as of Right; Judgment of the Circuit Court Reversed.**

J. S. (Steve) Daniel, SR. J. delivered the opinion of the court, in which Frank Drowota, C.J., and John A. Turnbull, SP. J. joined.

Dianne Stamey Dycus, Assistant Attorney General, Nashville, TN, for the appellant, Second Injury Fund.

William J. Butler, Farrar, Holliman, & Butler, Lafayette, TN, for the appellee, Larry Hopper.

**OPINION**
I. Facts and Procedural History

Mr. Larry Hopper, is a high school graduate whose primary means of employment has been in the field of warehousing as a laborer. He has no management experience. At the time of trial, Mr. Hopper was unemployed and was having difficulty obtaining work. Mr. Hopper worked for OshKosh B'Gosh for almost a decade. He was injured at least four times on the job, including the current case which was his first work-related injury.[1] After these various injuries Mr. Hopper returned to work, but subsequently lost his job due to a plant-wide shutdown unrelated to his injury.

The injury involved in this appeal occurred February 19, 1996. Mr. Hopper was operating a forklift when it fell through the floor of a trailer. Mr. Hopper ruptured his L5-S1 disk, an injury for which he later required surgery. After returning to work, Mr. Hopper again injured his back in October 1996. This injury also required surgery. Mr. Hopper separately filed two workers' compensation complaints for the two back injuries. The trial court consolidated the two actions. Mr. Hopper amended his second complaint to add the Second Injury Fund as a defendant, but the Second Injury Fund was later dismissed by a voluntary non-suit. The current action only seeks to reopen the first complaint relating to the first injury of February 19, 1996 as to vocational disability.

Mr. Hopper settled the issues related to his first injury by an order dated November 17, 1997, for 20% permanent partial disability. A second order dated December 9, 1997, reflects a settlement agreement for the second injury and assigns Mr. Hopper a further 54% vocational disability. After taking into account two subsequent injuries that he suffered while working at OshKosh, the amount of Mr. Hopper's vocational disability rating totaled more than 100%.

After OshKosh laid off Mr. Hopper, he filed for a reconsideration of the settlement related to the first injury, pursuant to Tenn. Code Ann. § 50-6-241(a)(2). Mr. Hopper claims that since OshKosh has already paid him for 100% industrial disability to the body as a whole, the Second Injury Fund is liable for any future increases in his award. The trial court agreed that Mr. Hopper was entitled to a reconsideration of his first award. It found that the November 17, 1997, settlement for 20% vocational disability was within 2 ½ times the medical disability rating limit on awards open for reconsideration under Tenn. Code Ann. § 50-6-242(a)(1). The trial court granted Mr. Hopper an additional award of 30% vocational disability and assigned liability for paying the award to the Second Injury Fund.

II. Standard of Review

Review of the findings of fact made by the trial court is de novo upon the record of the trial

---

[1] All told, Hopper initiated four workers' compensation complaints against OshKosh. In February 1996 he injured his back at the L5-S1 disc level when the forklift he drove fell through the floor of a trailer. In October 1996 he re-injured his back while lifting a 40 lb. box. In 1998-1999 he complained of a neck injury. Concurrently, he also complained of pain in his hands, wrists, and arms which was later diagnosed as Carpel Tunnel Syndrome.

court, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. Tenn. Code Ann. § 50-6-225(e)(2). The reviewing court is required to conduct an independent examination of the record to determine where the preponderance of the evidence lies. The standard governing appellate review of the findings of fact of a trial judge requires this panel to examine in depth the trial court's factual findings and conclusions. GAF Building Materials v. George, 47 S.W.3d 430, 432 (Tenn. 2001). Conclusions of law are subject to a de novo review on appeal without any presumptions of correctness. Niziol v. Lockheed Martin Energy Systems, Inc., 8 S.W.3d 622, 624 (Tenn. 1999). When medical testimony is presented by deposition, this court is able to make its own independent assessment of the medical proof to determine where the preponderance of the evidence lies. Cleek v. Wal-Mart Stores, Inc., 19 S.W.3d 770, 774 (Tenn. 2000).

### III. Analysis
#### Workers' Compensation Statute of Limitations and Time Limitations for Petitions for Reconsideration

Tenn. Code Ann. § 50-6-241(a)(1) limits an employee's recovery to 2 ½ times the medical impairment rating where an employer returns the employee to employment at a wage equal to or greater than the wage of the employee was receiving at the time of his or injury.[2] The cap limitations changed dramatically where an employer does not return the employee to employment at a wage equal to or greater than the wage that the employee was receiving at the time of the injury under the provisions of Tenn. Code Ann. § 50-6-241(b). Here, the employer's responsibility is capped at six (6) times the medical impairment.[3] In order to promote fairness and unanimity in workers'

---

[2] Tenn. Code Ann. § 50-6-241(a)(1) "For injuries arising on or after August 1, 1992, in cases where an injured employee is eligible to receive any permanent partial disability benefits, pursuant to § 50-6-207(3)(A)(i) and (F), and the pre-injury employer returns the employee to employment at a wage equal to or greater than the wage the employee was receiving at the time of injury, the maximum permanent partial disability award that the employee may receive is two and one-half (2 ½) times the medical impairment rating determined pursuant to the provisions of the American Medical Association Guides to the Evaluation of Permanent Impairment (American Medical Association), the Manual for Orthopedic Surgeons in Evaluating Permanent Physical Impairment (American Academy of Orthopedic Surgeons), or in cases not covered by either of these, an impairment rating by an appropriate method used and accepted by the medical community. In making determinations, the court shall consider all pertinent factors, including lay and expert testimony, employee's age, education, skills and training, local job opportunities, and capacity to work at types of employment available in claimant's disabled condition."

[3] Tenn. Code Ann. § 50-6-241(b) "Subject to factors provided in subsection (a) of this section, in cases for injuries on or after August 1, 1992, where an injured employee is eligible to receive permanent partial disability benefits, pursuant to § 50-6-207(3)(A)(i) and (F), and the pre-injury employer does not return the employee to employment at a wage equal to or greater than the wage the employee was receiving at the time of injury, the maximum permanent partial disability award that the employee may receive is six (6) times the medical impairment rating determined pursuant to the provisions of the American Medical Association Guides to the Evaluation of Permanent Impairment (American Medical Association), the Manual for Orthopedic Surgeons in Evaluating Permanent Physical Impairment (American Academy of Orthopedic Surgeons), or in cases not covered by either of these, an impairment rating by any appropriate method used and accepted by the medical community. In making

compensation laws between these two groups of employees. Tenn. Code Ann. § 50-6-241(a)(2) provides a mechanism for employees who are subject to the 2 ½ times medical impairment cap and who ultimately loose their jobs with their pre-injury employer to have a reconsideration of their industrial disability.[4] This section is an effort to put those employees who return to work but later lose their jobs in exactly the same position or posture as they would have been had they not been returned to work by their pre-injury employer. Tenn. Code Ann. § 50-6-241(a)(2) sets forth the procedure and time limitation for such employees to have this reconsideration. This statute requires an employee seeking such reconsideration to initiate such an action within "one year of the employee's loss of employment." However such reconsideration petition must be within "four hundred (400) weeks of the day the employee returned to work." In this case it appears that Mr. Hopper's petition for reconsideration met the two requirements envisioned by Tenn. Code Ann. § 50-6-241(a)(2). However, the Second Injury Fund asserts that the claim of Mr. Hopper is barred by the workers' compensation statute of limitations provided in Tenn. Code Ann. § 50-6-203.[5] Tenn. Code Ann. § 50-6-203 bars a claim unless it is filed within one (1) year after the accident resulting in injury or death. The Second Injury Fund was not served or put on notice of these claims in the original law suit. Therefore, they assert the provisions of Tenn. Code Ann. § 50-6-203 bar Mr. Hopper's statutory reconsideration claim.

Therefore, we are asked to consider the relationship of these two statutory provisions. We must determine if Mr. Hopper's reconsideration claim is barred by the provisions of Tenn. Code Ann. § 50-6-203 or whether the provisions of §50-6- 241(a)(2) set forth a special time limitation for asserting reconsideration claims separate and apart from the general statute of limitations.

---

such determinations, the court shall consider all pertinent factors, including lay and expert testimony, employee's age, education, skills and training, local job opportunities, and capacity to work at types of employment available in claimant's disabled condition."

[4] Tenn. Code Ann. § 50-6-241(a)(2) " In accordance with this section, the courts may reconsider, upon the filing of a new cause of action, the issue of industrial disability. Such reconsideration shall examine all pertinent factors, including lay and expert testimony, employee's age, education, skills and training, local job opportunities, and capacity to work at types of employment available in claimant's disabled condition. Such reconsideration may be made in appropriate cases where the employee is no longer employed by the pre-injury employer and makes application to the appropriate court within one (1) year of the employee's loss of employment, if such loss of employment is within four hundred (400) weeks of the day the employee returned to work. In enlarging a previous award, the court must give the employee credit for prior benefits paid to the employee in permanent partial disability benefits, and any new award remains subject to the maximum established in subsection (b)."

[5] Tenn. Code Ann. § 50-6-203(a) "The right to compensation under the Workers' Compensation Law shall be forever barred, unless, within one (1) year after the accident resulting in injury or death occurred, the notice required by § 50-6-202 is given the employer and a claim for compensation under the provisions of this chapter is filed with the tribunal having jurisdiction to hear and determine the matter; provided, that if within the one-year period voluntary payments of compensation are paid to the injured person or the injured person's dependents, an action to recover any unpaid portion of the compensation, payable under this chapter, may be instituted within one (1) year from the latter of the date of the last authorized treatment or the time the employer shall cease making such payments, except in those cases provided for by § 50-6-230. Where a workers' compensation suit is brought by the employer or the employer's agent and the employer or agent files notice of non-suit of the action at any time on or after the date of expiration of the statute of limitations, either party shall have ninety (90) days from the date of the order of dismissal to institute an action for recovery of benefits under this chapter."

Statutory construction which places one statute in conflict with another must be avoided; therefore, we must resolve any possible conflict between statutes in favor of each other. Cronin v. Howe, 906 S.W.2d 910, 912 (Tenn. 1995). Courts must seek the most "reasonable construction which avoids statutory conflict and provides for harmonious operation of the laws." LensCrafters, Inc. v. Sundquist, 33 S.W.3d 772, 777 (Tenn. 2000). We must presume that the legislature did not intend an absurdity. Kite v. Kite, 22 S.W.3d 803, 805 (Tenn. 1997). Statutes relating to the same subject or sharing a common purpose must be construed together (in pari materia) in order to advance their common purpose. Carver v. Citizen Utils. Co., 954 S.W.2d 34, 35 (Tenn. 1997).

The court in Nay v. Resource Consultants, Inc., 2000 W.L. 4255 at 4 (Tenn. Wkrs. Comp. Panel, January 5, 2000), concluded that reconsideration actions under the provisions of Tenn. Code Ann. § 241(a)(2) are separate and distinct causes of action. We also conclude that the statutory provisions for reconsideration under this subsection create a separate and distinct action whose time limitation for initiation of reconsideration of prior claims do not offend or conflict with the general statute of limitations imposed by Tenn. Code Ann. § 50-6-203. This statutory provision erects its own embedded time limitation for reconsideration causes of action. Therefore, we conclude that Mr. Hopper's claim is timely.

IV. Analysis
Second Injury Fund Liability for Reconsideration of
Vocational Disability for the First Injury

This case presents the novel issue of whether the Second Injury Fund can be liable for a worker's first injury in the context of a reconsideration action. The question requires us to examine the statutes and the legislative purposes behind the Second Injury Fund and the right to a reconsideration of an earlier workers' compensation award.

The clear purpose of the Second Injury Fund is to promote the hiring and retention of employees who have been previously injured. Tenn. Code Ann. § 50-6-208; Henson v. City of Lawrenceburg, 851 S.W.2d 809, 818 (Tenn. 1993). This court explained the underlying principles that underpin the Second Injury Fund in E. I. du Pont de Nemours & Company v. Friar, 404 S.W.2d 518, 521, 522 (Tenn. 1966) when we stated:

> In the development of the law of Workers' Compensation the rule has come to be that an employer takes an employee the way he finds him and is liable for the disability resulting from an accident which aggravates a pre-existing physical impairment. This rule, of course, meant that employers were assuming additional liability when a person was hired who had a physical impairment, and naturally resistance to employment of such persons became evident in hiring policies. The Legislature, recognizing that employment of handicapped persons is in the interest of society, enacted the Second Injury Fund law to overcome some of the resistance to employment of disabled persons. The clear purpose of this legislation is to encourage employers to hire workers with an existing handicap which would impair their competitive position as a job seeker. . . .

Stated another way, this guide line is; did the employer know of a physical condition of the employee, at the time of the hiring of the employee, which detracted from such employee's competitiveness in the job market? If the employer did have knowledge of such pre-existing condition and the employee was hires in spite of such condition, then we think that the Second Injury Fund would be liable if a second injury rendered the employee totally disabled. . . . .

There are two types of cases that the Second Injury Fund covers. Tenn. Code Ann. §50-6-208(a) limits the liability of an employer that hires a disabled employee whose disabilities are attributable to any prior cause. Tenn. Code Ann. § 50-6-208(b) limits the employer's liability who employs individuals who have received or will receive workers' compensation awards for permanent disability to their body from work-related injuries and those disabilities exceed 100%. The current controversy is a section 208(b) claim. The statutory language that created the Second Injury Fund limits the liability of the Second Injury Fund to "subsequent, compensable injuries to the body as a whole." Tenn. Code Ann. § 50-6-208(b)(1)(C). Therefore, the statute by its express provision limits the liability of the Second Injury Fund in either (a) or (b) to second or subsequent injuries in which the total disability exceeds 100%. This court in Davis v. Alexander, 372 S.W.2d 769, 770, took the position that liability for the Second Injury Fund was limited to total incapacity resulting from a second injury.[6] Therefore, in order for a complainant such as Mr. Hopper to make a claim against the Second Injury Fund he must suffer from a prior permanent disability either work or none work-related as envisioned by Tenn. Code Ann. § 50-6-208(a) or (b). E. I.du Pont de Nemours & Company v. Friar, 404 S.W.2d 518, 521. Mr. Hopper fails to meet this prerequisite for a claim against the Second Injury Fund.

We conclude that based on the nature of Mr. Hopper's claim, he fails to meet the prerequisites of asserting a claim against the Second Injury Fund when he seeks to reopen for reconsideration his vocational disabilities, his first workers' compensation claim. The reconsideration provisions seeking to expand prior industrial disability awards against the Second Injury Fund are limited to second or subsequent claims of the employee and are not available for the first workers' compensation claim. Having concluded that the trial court's error requires us to reverse its decision in holding the Second Injury Fund liable for any sum in relationship to a reconsideration of a first injury, we find it unnecessary to address other issues raised by the Second Injury Fund concerning the preponderance of the evidence necessary to increase the employee's vocational disability and whether the employee's suffering of subsequent injuries that resulted in awards would bar reconsideration in appropriate cases under the provisions of Tenn. Code Ann. § 50-6-241(a) or (b).

For the reasons set forth above, we find that the provisions of Tenn. Code Ann. § 50-6-208 do not contemplate that the Second Injury Fund would ever be liable for any type of recovery in a

---

[6] Davis v. Alexander, 372 S.W.2d 769, (Tenn. 1963), "Tenn. Code Ann. § 50-1027 provides for payment from the Second Injury Fund when and only when an employee becomes permanently and totally incapacitated resulting from a second injury. If the employee is not permanently and totally disabled, then he has no claim against the Second Injury Fund. In order to sustain such a claim he has to prove first that he sustained a pervious permanent disability and that as a result of a second injury he has become permanently and totally disabled."

claim for reconsideration for a first injury. There must be a subsequent injury and the claim for reconsideration must be associated with the subsequent injury before the Second Injury Fund could be liable for a reconsideration award under the provisions of Tenn. Code Ann. § 50-6-241(a)(1) or (b). Having found that Larry Hopper had no standing to sue the Second Injury Fund for a

reconsideration of a first injury settlement, we reverse the trial court's finding of Second Injury Fund liability and dismiss this action. Costs of this appeal are assessed against Mr. Hopper.

_____
J. S. DANIEL, SENIOR JUDGE

# IN THE SUPREME COURT OF TENNESSEE
## SPECIAL WORKERS' COMPENSATION APPEALS PANEL
### JUNE 10, 2005 SESSION


## LARRY HOPPER v. OSHKOSH B'GOSH AND STATE OF TENNESSEE DEPARTMENT OF LABOR, DIVISION OF WORKERS' COMPENSATION, SECOND INJURY FUND

### Circuit Court for Clay County
### No. 1410WC

---

### No. M2004-01683-WC-R3-CV - Filed - September 22, 2005

---

### JUDGMENT


This case is before the Court upon the entire record, including the order of referral to the Special Workers' Compensation Appeals Panel, and the Panel's Memorandum Opinion setting forth its findings of fact and conclusions of law, which are incorporated herein by reference.

Whereupon, it appeals to the Court that the Memorandum Opinion of the Panel should be accepted and approved; and

It is, therefore, ordered that the Panel's findings of fact and conclusions of law are adopted and affirmed, and the decision of the Panel is made the judgment of the Court.

Costs will be paid by the Appellee, Larry Hopper, for which execution may issue if necessary.

IT IS SO ORDERED.


PER CURIAM