Charles HUDDLESTON,
Plaintiff–Appellee,

v.

HARTFORD ACCIDENT & INDEMNITY COMPANY,
Defendant–Appellee,

and

Sue Ann Head, Director of the Division of Workers' Compensation, Tennessee Department of Labor Second Injury Fund, Defendant–Appellant.

Supreme Court of Tennessee, at Nashville.

July 12, 1993.

David H. Dunaway, LaFollette, for appellee Huddleston.

W. Mitchell Cramer and R. Franklin Norton, Knoxville, for appellee Hartford Acc. & Indem. Co.

Charles W. Burson, Atty. Gen. and Reporter, Dianne Stamey Dycus, Asst. Atty. Gen., Nashville, for appellant.

## OPINION

DAUGHTREY, Justice.

The dispositive questions in this workers' compensation appeal concern the proper application of T.C.A. § 50-6-208, governing awards for the subsequent permanent injury of a worker who has sustained a previous permanent injury. The trial court found that the plaintiff, Charles E. Huddleston, was totally and permanently disabled as a result of a subsequent injury; apportioned liability for the award at 15 percent to the employer and its insurance carrier and 85 percent to the Second Injury Fund; and ordered payment to the plaintiff in a lump sum.

The Fund has appealed the trial court's judgment, arguing (1) that the chancellor invoked the wrong subsection of the subsequent injury statute, (2) that the Fund was liable for not more than 15 percent of the award, and (3) that, because the proof failed to establish the plaintiff's total disability, the Fund's liability should have assessed at even less than 15 percent.

In response, the employer's insurance carrier insists that if the plaintiff is 100 percent disabled, most (if not all) of his disability is attributable to his previous injury and that, as a result, the Fund's share of the award should be increased from 75 percent to 90 or 100 percent.

Based upon our review of the record, we conclude that the evidence supports the chancellor's determination that the plaintiff is now totally and permanently disabled and that he has been so disabled since he sustained the work-related injury that is the subject of this litigation. The next step is proper apportionment of the compensation award between the insurance carrier and the Fund, which turns on the

application of T.C.A. § 50–6–208(a) and (b) to the facts of this case.

At trial, Huddleston testified that he had suffered two work-related injuries in Kentucky before he was hired by his current employer, one in 1970 and the other in 1986. The 1970 injury to Huddleston's back had resulted in a 10–15 percent permanent disability settlement, Huddleston said, but he produced no documentary evidence concerning that incident. The 1986 injury, also to his back, had been handled under the Kentucky workers' compensation statute, resulting in an award of 15 percent permanent disability approved by the Kentucky Workers' Compensation Board, as indicated by a certified copy of the Board's order that was introduced as an exhibit at trial.

Apparently because the prior awards were not court-approved but were known to the current employer, the chancellor determined that this case is controlled by T.C.A. § 50–6–208(a), which provides as follows:

> (a)(1) If an employee has previously sustained a permanent physical disability from any cause or origin and becomes permanently and totally disabled through a subsequent injury, such employee shall be entitled to compensation from such employee's employer or the employer's insurance company only for the disability that would have resulted from the subsequent injury, and such previous injury shall not be considered in estimating the compensation to which such employee may be entitled under this chapter from the employer or the employer's insurance company; provided, that in addition to such compensation for a subsequent injury, and after completion of the payments therefor, then such employee shall be paid the remainder of the compensation that would be due for the permanent total disability out of a special fund to be known as the "second injury fund" therein created.
>
> (2) To receive benefits from the second injury fund, the injured employee must be the employee of an employer who has properly insured such employer's workers' compensation liability or has qualified to operate under the Workers' Compensation Law as a self-insurer, and the employer must establish that the employer has actual knowledge of the permanent and preexisting disability at the time that the employee was hired or at the time that the employee was retained in employment after the employer acquired such knowledge, but in all cases prior to the subsequent injury.

The trial court, finding under subsection (a)(1) that the greater proportion of Huddleston's disability occurred prior to his employment in Tennessee, assessed only 25 percent of the total liability against his employer's insurance carrier and the remaining 75 percent against the Fund.

On appeal, the Fund insists that the chancellor erred in applying subsection (a) in this case and that the provisions of subsection (b), following, should control the facts here:

> (b)(1)(A) In cases where the injured employee has received or will receive a workers' compensation award or awards for permanent disability to the body as a whole, and the combination of such awards equals or exceeds one hundred percent (100%) permanent disability to the body as a whole, the employee shall not be entitled to receive from the employer or its insurance carrier any compensation for permanent disability to the body as a whole that would be in excess of one hundred percent (100%) permanent disability to the body as a whole, after combining awards.

◼ As the Fund acknowledges, workers' compensation awards that are not court-approved cannot be considered in determining the Fund's liability under subsection (b) of the subsequent injury statute. *See Hale v. CNA Ins. Cos.*, 799 S.W.2d 659, 662 (Tenn.1990). The insurance carrier agrees but argues further that only *Tennessee* court-approved awards qualify under subsection (b). Under this theory, it follows that because there are no such prior Tennessee awards in this case, the Fund's liability should be calculated under

**318**

subsection (a) to cover most of the plaintiff's disability.

The insurance carrier relies for authority on our recent opinion in *Cox v. Martin Marietta Energy Sys.*, 832 S.W.2d 534, 538 (Tenn.1992). In that case we held that a Veterans Administration disability award should not be considered in determining liability under subsection (b). But, there are obviously significant differences between a system meant to compensate military veterans' disabilities and those designed to compensate injured employees, regardless of procedural differences existing in workers' compensation schemes from state to state.

■ In Kentucky, for example, workers' compensation claims are reviewed exclusively under a commission system, and settlements are approved by the Kentucky Workmen's Compensation Board. *See* Ky. Rev.Stat.Ann. § 342.265 (Michie 1993). A trial court has no authority under Kentucky law to approve a workers' compensation settlement. *See Ky. Workmen's Compensation Bd. v. Alexander*, 562 S.W.2d 670, 672 (Ky.App.1978). In this case, the agreed settlement of the plaintiff's 1986 claim, as approved by the Kentucky Workmen's Compensation Board, is a valid and enforceable workers' compensation award. Nothing in the express language of subsection (b), authorizing judicial consideration of a prior "workers' compensation award or awards for permanent disability to the body as a whole," would restrict Tennessee courts from recognizing valid and enforceable out-of-state awards that are the functional equivalent of court-approved in-state awards.

We thus agree with the Second Injury Fund's contention that the apportionment of liability in this case is controlled by T.C.A. § 50–6–208(b)(1)(A) and that the Fund is therefore responsible for 15 percent of the total award, to be paid after the insurance carrier has paid its 85 percent share.

■ The only remaining dispute concerns the propriety of the trial court's order commuting the entire award to payment in a lump sum. The record fails to support the chancellor's order in this regard. The judgment of the trial court reflects that "the Plaintiff has demonstrated a special need to receive his benefits in a lump sum and that the Plaintiff can wisely manage his money." The record indicates that the plaintiff proposed to utilize at least part of his award to retire his home mortgage, remodel his home, and pay off his car note. He also testified about debts that he owed various members of his family who advanced money to him following his injury.

What is missing from the trial court's order, as well as from the record, is a determination that full commutation under these circumstances is in the injured worker's *best interest*, as required by T.C.A. § 50–6–229(a), as amended (1990). At the most, it would appear that Huddleston is entitled to only a partial lump-sum payment, limited to debts owed to his family and others that were incurred as the direct result of his injury and resulting disability. We conclude that a remand is in order, to permit an accurate calculation of the amount to be commuted under the guidelines established in *North American Royalties v. Thrasher*, 817 S.W.2d 308, 312 (Tenn.1991).

On remand, the trial court may wish to entertain a motion to order the payment of the attorney's fee in a lump sum, pursuant to T.C.A. § 50–6–229(a), as amended effective July 1, 1992. *See generally Modine Mfg. Co. v. Patterson*, 1993 WL 330625 (Tenn., July 7, 1993).

The judgment of the trial court is affirmed in part and reversed in part, and the case is remanded for further proceedings consistent with this opinion.

REID, C.J., and DROWOTA, O'BRIEN and ANDERSON, JJ., concur.